UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LEEWARD CAPITAL, L.P, <br><br> Plaintiff, <br><br> v. <br><br> ARCHON CORP., <br><br> Defendant. | 2:08-CV-00007-PMP-LRL <br><br> O R D E R |

   Presently before the Court is Plaintiff's Motion for Summary Judgment (Doc. #39), filed on August 19, 2010. Defendant filed a Response (Doc. #44) on September 9, 2010. Plaintiff filed a Reply (Doc. #46) on September 27, 2010. Also before the Court is Plaintiffs's Motion to Strike Affirmative Defenses (Doc. #40), filed on August 19, 2010. Defendant filed a Response (Doc. #42) on September 7, 2010. Plaintiff filed a Reply (Doc. #45) on September 17, 2010. Defendant filed a counter Motion for Summary Judgment (Doc. #43) on September 9, 2010. Plaintiff filed a Response (Doc. #47) on September 27, 2010. Defendant filed a Reply (Doc. #48) on October 14, 2010.

   This case involves similar facts regarding the alleged breach of the Certificate of Designation of the Exchangeable Redeemable Preferred Stock of Sahara Gaming Corporation ("Certificate") as two other pending cases, D.E. Shaw Laminar Portfolios, LLC, et. al., v. Archon Corp, Case No. 2:07-cv-1146-PMP-LRL ("Shaw"), and David Rainero, on behalf of himself and on behalf of others similarly situated, v. Archon Corp., Case No. 2:07-cv-01533-RCJ-PAL. In Shaw, this Court granted Plaintiffs partial summary

judgment, holding that the Certificate was unambiguous and that Plaintiffs' interpretation of dividend calculations which results in compounding is correct.

## I. BACKGROUND

In 1993, Defendant Archon Corp. ("Archon"),[1] a Nevada corporation, issued a class of equity securities designated as Exchangeable Redeemable Preferred Stock ("Exchangeable Preferred Stock" or "EPS"). (Decl. of P. Lowden (Doc. #43), Ex. 1.) Plaintiff is a California limited partnership which holds EPS shares. (Compl. (Doc. #1), ¶ 7.) From the period of January 1, 2007 to December 31, 2007, Plaintiff purchased 60,000 EPS shares. (Mot. for Summ. J. (Doc. #39), Ex. 1.)

The Certificate is the contract between Archon and the EPS holders, and details the rights of EPS holders. (Id., Ex. 4.) The Certificate provides, in relevant part:

> 1. <u>Designation and Rank</u> . . . Shares of the Exchangeable Preferred Stock shall have a liquidation preference of $2.14 per share plus accrued and unpaid dividends, thereon, subject to Section 7(a).
> . . .
>
> 2. <u>Cumulative Dividends Priority</u>.
> (a) <u>Payment of Dividends</u>. The holders of record of shares of Exchangeable Preferred Stock shall be entitled to receive, when, as and if declared by the Board of Directors out of funds legally available therefore, cumulative case dividends at a rate per annum per share (the "Dividend Rate") initially set at 8% of (i) $2.14 plus (ii) accrued but unpaid dividends as to which a Dividend Payment Date (as defined below) has occurred. Dividends shall accrue from the date of issuance and be payable semi-annually in arrears on the 31st day of March and the 30th day of September in each year . . . commencing on March 31, 1994 (each of such dates a "Dividend Payment Date"); provided, however, that on any or all of the first six Dividend Payment Dates the Company may, at its option, pay dividends on the Exchangeable Preferred Stock, in the form of additional shares of Exchangeable Preferred Stock at the rate per annum of 0.08 shares of additional Exchangeable Preferred Stock for every share of Exchangeable Preferred Stock entitled to received [sic] a dividend. If all Exchangeable Preferred Stock has not been redeemed prior to the tenth Dividend Payment Date, the Dividend Rate will increase on the tenth Dividend Payment Date to the rate per annum per share of 11% and

---

[1] Archon previously was named Sahara Gaming Corporation.

> will thereafter increase by an additional 0.50% per annum per share on each Dividend Payment Date until either the Dividend Rate reaches a rate per annum per share of 16% or the Exchangeable Preferred Stock is redeemed or exchanged by the Company as set forth herein. In no circumstances will the Dividend Rate exceed 16% per annum per share. . . . Dividends on the Exchangeable Preferred Stock shall be fully cumulative and shall accrue (whether or not declared), on a daily basis, from the first day of each Dividend Period; provided, however, that the initial semi-annual dividend payable on March 31, 1994 and the amount of any dividend payable for any other Dividend Period shorter than a full Dividend Period shall be computed on the basis of a 360-day year composed of twelve 30-day months and the actual number of days elapsed in the relevant Dividend Period.
> . . .
> 3. <u>Optional Redemption</u>.
> (a) <u>General</u>
> (i) . . . [T]he shares of Exchangeable Preferred Stock may be redeemed, in whole or in part, at the election of the Company, upon notice as provided in Section 3(b), by resolution of the Board of Directors, . . . at a redemption price equal to the Liquidation Preference.
> . . .
> 7. <u>Liquidation Rights; Priority</u>
> . . . [The Liquidation Preference is an amount] per share equal to the sum of (i) $2.14, plus (ii) an amount equal to all accrued but unpaid dividends for the then current Dividend Period, through the date of liquidation, dissolution, or winding up, plus all prior Dividend Periods, whether or not declared . . . .

(<u>Id.</u>)

Archon elected to make payment in kind dividend payments in lieu of cash on the first six dividend payment dates. (Def.'s Mot. for Summ. J. (Doc. #44), Ex. 1.) After the first six payments, Archon accrued cumulative dividends rather than pay cash. (<u>Id.</u>) The Certificate provides that dividends accrue to the extent not declared. (Mot. for Summ. J., Ex. 4.) The EPS dividends were fully cumulative, meaning there is no time limit as to how long they can accrue. (<u>Id.</u>) Dividends were to accrue on the EPS at an increasing dividend rate if not paid. (<u>Id.</u>)

Shares of the EPS could be redeemed at any time, at Archon's election, upon notice and by resolution of Archon's Board of Directors and upon payment of a redemption price equal to the Liquidation Preference for such shares. (Mot. for Summ. J., Ex. 4.) On

3

July 31, 2007, Archon issued a Notice of Redemption of Preferred Stock ("Notice"), indicating it would redeem each outstanding share of EPS for $5.241 per share, which Archon claimed included all accrued but unpaid dividends. (Mot. for Summ. J., Ex. 5.) Archon redeemed the EPS on August 31, 2007 for $5.241 per share. (Def.'s Mot. for Summ. J., Ex. 1.) Plaintiff brought suit in this Court on January 2, 2008, for breach of contract, alleging Archon did not properly calculate the EPS dividends and Liquidation Preference according to the Certificate's terms.

On August 6, 2008, this Court granted partial summary judgment to Plaintiffs in Shaw, holding that the Certificate was unambiguous and Plaintiffs' interpretation of the Certificate which results in compound dividends is correct. (Mot. for Summ. J., Ex. 3.) This Court also struck four of Defendant's five affirmative defenses, leaving only the defense of failure to mitigate which was not challenged by Plaintiffs' Motion. (Id.)

In the present case, Plaintiff now moves for final summary judgment, entry of final judgment, and prejudgment interest. Plaintiff also moves to strike Defendant's affirmative defenses of equitable estoppel, lack of standing, unclean hands, failure to mitigate, and statute of limitations. Defendant contends that this Court's prior order interpreting the Certificate was in error, and that Archon paid the correct redemption price. Defendant counter moves for summary judgment.

**II. LEGAL STANDARD**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions, and affidavits demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. Where a party fails to offer evidence sufficient to establish an element essential to its

4

case, no genuine issue of material fact can exist, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The party "seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings . . .' which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323. The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue of material fact for trial. Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 531 (9th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party. County of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001).

## III. DISCUSSION

### A. Affirmative Defenses

Plaintiff moves to strike Archon's affirmative defenses of equitable estoppel, Plaintiff's lack of standing, unclean hands, failure to mitigate, and statute of limitations. In its Opposition to Plaintiff's Motion to Strike, Defendant abandoned the affirmative defenses of lack of standing, unclean hands, and statute of limitations. The Court therefore will grant Plaintiff's Motion to Strike with respect to these defenses.

Federal Rule of Civil Procedure 12(f) provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Affirmative defenses that are insufficient as a matter of law should be stricken. Donovan v. Schmoutey, 592 F. Supp. 1361, 1402 (D. Nev. 1984). However, "[f]ederal courts generally disfavor motions to strike." Germaine Music v. Universal Songs of Polygram, 275 F. Supp. 2d 1288, 1300 (D. Nev. 2003). "A court must view the pleading under attack in the light most favorable to the pleader" and should not weigh the sufficiency of evidence in evaluating a motion to strike. Cardinale v. La Petite Acad., Inc., 207 F. Supp.

5

2d 1158, 1162 (D. Nev. 2002). Whether to strike affirmative defenses is within the Court's discretion. Fed. Sav. & Loan Ins. Corp. v. Gemini Mgmt., 921 F.2d 241, 244 (9th Cir. 1990).

### 1. Equitable Estoppel

Archon asserts the affirmative defense of equitable estoppel on the theory that Plaintiff knew how Archon would calculate its preferences, and therefore Plaintiff should be estopped from enforcing the contract under a different calculation of preferences. Plaintiff argues the Court should strike the defense because Plaintiff's alleged notice of Archon's views about the Certificate before any breach occurred do not constitute notice of a breach and thus the defense is legally insufficient.

"'Equitable estoppel functions to prevent the assertion of legal rights that in equity and good conscience should not be available due to a party's conduct.'" In re Estate of Prestie, 138 P.3d 520, 525 (Nev. 2006) (quoting In re Harrison Living Trust, 112 P.3d 1058, 1061-62 (Nev. 2005)). Equitable estoppel requires that "(1) the party to be estopped must be apprised of the true facts, (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; (4) he must have relied to his detriment on the conduct of the party to be estopped." In re Harrison Living Trust, 112 P.3d at 1062; see also Pellegrini v. State, 34 P.3d 519, 531 (Nev. 2001) (holding that equitable estoppel requires justifiable reliance by the party invoking the doctrine). Whether to apply equitable estoppel is within the Court's discretion. Id. The Court should strike the affirmative defense of equitable estoppel when a defendant does not allege the necessary elements. Donovan, 592 F. Supp. at 1403.

Archon has not pled the reliance element of equitable estoppel, or any facts that would support a fair inference of reliance. Moreover, given that Archon authored the Certificate, which constitutes the contract at issue, and Plaintiffs bought the EPS based on

the Certificate's terms, there exists no apparent manner in which Archon could have relied on Plaintiffs.  Further, this Court previously found the Certificate to be unambiguous, therefore Archon could not reasonably be ignorant of the true facts regarding the terms of the Certificate.  Due to these deficiencies in pleading the requisite elements of estoppel, this Court will grant Plaintiff's Motion to Strike Archon's Affirmative Defense of Equitable Estoppel.

### 2.  Mitigation of Damages

In Nevada, "a party cannot recover damages for loss that he could have avoided by reasonable efforts."  Conner v. S. Nev. Paving, Inc., 741 P.2d 800, 801 (Nev. 1987).  However, "[i]f a course of action chosen by a plaintiff in responding to the damage caused him by the defendant was reasonable, the plaintiff can recover despite the existence of another reasonable course of action that would have avoided further damages."  A.I. Credit Corp. v. Gohres, 299 F. Supp. 2d 1156, 1162 (D. Nev. 2004).

Here, Defendant sets forth the affirmative defense of mitigation, claiming that Plaintiff was damaged by its own conduct of acquiring shares after it learned that Archon was not compounding dividends.  In Shaw, this Court held that the Certificate governing the rights of EPS holders was unambiguous and that Plaintiffs' interpretation of the formula for calculating dividends was correct.  Therefore, it was reasonable for Plaintiff to rely on the Certificate when purchasing EPS shares.  Additionally, it is unreasonable to expect Plaintiff to refrain from relying on an interpretation of the Certificate which this Court has deemed unambiguous and correct merely because it allegedly had notice that Defendant was interpreting the Certificate incorrectly.  Defendant does not raise a genuine issue of material fact regarding mitigation.  Defendant's mitigation defense is an attempt to re-litigate this Court's prior ruling on the calculation of dividend amounts.  The Court will decline to revisit this issue.  The Court, therefore, will grant Plaintiff summary judgment on Archon's affirmative defense of failure to mitigate.

### B. Entry of Final Judgment

Plaintiff argues that it is entitled to summary judgment because the Certificate governing redemption of EPS is unambiguous and Archon breached the Certificate by redeeming the EPS at a price lower than the terms set forth in the Certificate. Conversely, Archon argues that it paid EPS holders what they were entitled to, Plaintiff's calculation is not supported by the Certificate, and Archon is entitled to summary judgment.

As this Court previously held in Shaw, the Certificate is unambiguous. The dividend amount is calculated by taking the dividend rate (initially set at 8%) and applying it to the sum of (i) $2.14 plus (ii) accrued but unpaid dividends as to which a Dividend Payment Date has occurred. As written, the dividend rate applies to the sum of (i) and (ii). To read it otherwise requires changing the meaning as it is written and disregarding an entire clause. Moreover, while Archon argues the Certificate is facially ambiguous, it has not demonstrated how it is reasonably susceptible to more than one meaning by offering an alternative reasonable interpretation. Finally, punctuation, or clause numbering, in Section 2(a) is essential to its meaning. Removing the numbering would render an unambiguous phrase ambiguous.

There is no genuine issue of material fact regarding damages, all that is left is for the Court to determine damages by: calculating the dividend amounts as set forth above; using this to calculate the Liquidation Preference ((i) $2.14, plus (ii) an amount equal to all accrued and unpaid dividends); calculating the difference between the Liquidation Preference and the amount tendered by Archon; and multiplying this difference by the number of shares owned by Plaintiff.

Archon elected to make dividend in kind payments for the first six dividend payments. Beginning with the seventh dividend payment, dividends accrued at a rate of 8% per annum per share of the sum of (i) $2.14 plus (ii) accrued but unpaid dividends. On the tenth Dividend Payment Date the Dividend Rate increased to 11% per annum per share and

increased 0.50% per annum per share every Dividend Payment Date until the Dividend Rate reached a rate per annum per share of 16%. The table below summarizes the calculations determining each Dividend Payment amount, the total amount of accrued but unpaid dividends, and the Liquidation Preference.[2]

**Table 1.  Dividend Calculations**

| Dividend Payment Date | Dividend Rate | Accrued but Unpaid Dividends | Dividend Rate multiplied by ($2.14 plus Accrued but Unpaid Dividends) |
|---|---|---|---|
| March 31, 1997 | 0.08 | 0 | 0.0856 |
| September 30, 1997 | 0.08 | 0.0856 | 0.0890 |
| March 31, 1998 | 0.08 | 0.1746 | 0.0926 |
| September 30, 1998 | 0.08 | 0.2672 | 0.0963 |
| March 31, 1999 | 0.11 | 0.3635 | 0.1377 |
| September 30, 1999 | 0.115 | 0.5012 | 0.1519 |
| March 31, 2000 | 0.12 | 0.6531 | 0.1676 |
| September 30, 2000 | 0.125 | 0.8206 | 0.1850 |
| March 31, 2001 | 0.13 | 1.0057 | 0.2045 |
| September 30, 2001 | 0.135 | 1.2102 | 0.2261 |
| March 31, 2002 | 0.14 | 1.4363 | 0.2503 |
| September 30, 2002 | 0.145 | 1.6866 | 0.2774 |
| March 31, 2003 | 0.15 | 1.9641 | 0.3078 |
| September 30, 2003 | 0.155 | 2.2719 | 0.3419 |
| March 31, 2004 | 0.16 | 2.6138 | 0.3803 |
| September 30, 2004 | 0.16 | 2.9941 | 0.4107 |
| March 31, 2005 | 0.16 | 3.4048 | 0.4436 |

---

[2]  The August 31, 2007 Dividend calculation was prorated in accordance with section 2(a) of the Certificate, which states, "the amount of any dividend payable for any other Dividend Period shorter than a full Dividend Period shall be computed on the basis of a 360-day year composed of twelve 30-day months and the actual number of days elapsed in the relevant Dividend Period." (Mot. for Summ. J., Ex. 4.)

| | | | |
|---|---|---|---|
| September 30, 2005 | 0.16 | 3.8484 | 0.4791 |
| March 31, 2006 | 0.16 | 4.3275 | 0.5174 |
| September 30, 2006 | 0.16 | 4.8449 | 0.5588 |
| March 31, 2007 | 0.16 | 5.4037 | 0.6035 |
| August 31, 2007 | 0.16 | 6.0071 | 0.5431 |
| Total Accrued but Unpaid Dividends on August 31, 2007 | | | $6.55 |
| Liquidation Preference = $2.14 + $6.55 = $8.69 | | | |

The total amount of accrued but unpaid dividends from the relevant period was $6.55. The Liquidation Preference is calculated by finding the sum of (i) $2.14, plus (ii) an amount equal to all accrued but unpaid dividends, yielding a Liquidation Preference of $8.69.

Archon redeemed all EPS at the price of $5.241 per share on August 31, 2007. The difference between the correct Liquidation Preference and the amount paid by Archon is $3.449 per share. As of August 31, 2007, (the date of Archon's redemption), Plaintiff held 60,000 shares of EPS, giving rise to damages of $206,940.00.

### C. Prejudgment Interest

In diversity actions, the award of prejudgment interest is governed by state law. In re Cardelucci, 285 F.3d 1231, 1235 (9th Cir. 2002). In Nevada, "[t]hree items must be determined to enable the trial court to make an appropriate award of interest: (1) the rate of interest; (2) the time when it commences to run; and (3) the amount of money to which the rate of interest must be applied." Kerala Props., Inc. v. Familian, 137 P.3d 1146, 1148-49 (Nev. 2006) (quotation omitted). In regards to the rate of interest, Nevada Revised Statutes § 99.040(1) provides:

> [w]hen there is no express contract in writing fixing a different rate of interest, interest must be allowed at a rate equal to the prime rate at the largest bank in Nevada, as ascertained by the Commissioner of Financial Institutions, on January or July 1, as the case may be, immediately preceding the date of the transaction, plus 2 percent, upon all money from the time it becomes due . . . .

Here, the Certificate does not expressly provide the rate of interest, and therefore § 99.040(1) determines the rate of interest. From the period of January 1, 2007 to December 31, 2007, the prime rate was 8.25%[3] and Plaintiffs purchased 60,000 EPS shares. Adding two percent to the prime rate as provided by statute results in an interest rate of 10.25%.

Interest commences to run from August 31, 2007, the date Archon breached the certificate by redeeming the EPS shares for the incorrect amount. The amount of money to which the relevant rates must be applied is determined by multiplying the difference between the amount of the correct Liquidation Preference and what Archon paid ($8.69 - $5.241 = $3.449) by the 60,000 EPS shares from the relevant interest period. For the 60,000 EPS shares purchased in the period from January 1, 2007 to August 31, 2007, interest of 10.25% per annum will be calculated from August 31, 2007 on $206,940.00.

## IV.     CONCLUSION

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Summary Judgment and Entry of Final Judgment (Doc. #39) is hereby GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike Affirmative Defenses (Doc. #40) is hereby GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (Doc. #43) is hereby DENIED.

///
///
///
///
///

---

[3] This Court takes judicial notice of the prime interest rate as ascertained by the Commissioner of Financial Institutions. Fed. R. Evid. 201 (Court may take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.")

11

1   IT IS FURTHER ORDERED that Judgment is hereby entered in favor of Plaintiff and against Defendant in the amount of $206,940.00 for damages, $79,734.43 for pre-Judgment interest, for a total Judgment of $286,674.43.

DATED: December 22, 2010.

_____
PHILIP M. PRO
United States District Judge